UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CURTIS CLINKSCALES,

               Petitioner,

                                                        **REPORT AND RECOMMENDATION**
                                                                20 CV 3757 (RPK)(LB)

    - against -

JAIFA COLLADO,

               Respondent.
----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

        Petitioner, Curtis Clinkscales, filed this *pro se* petition seeking a writ of habeas corpus ("the petition") pursuant to 28 U.S.C. § 2254 challenging his convictions for Rape in the First Degree, Sodomy in the First Degree, and Sexual Abuse in the First Degree.[1] Pet., ECF No. 1. The Honorable Rachel P. Kovner referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

      **I.**         **The Underlying Crimes**

        According to the evidence adduced at trial,[2] on January 10, 1996, sometime after 12:45 a.m., Pearlene Segers was raped by petitioner while walking from the subway back to her apartment. Trial Tr. 483:6-497:8, ECF 6-3. Petitioner followed Ms. Segers as she walked home

---

[1] The petition states that petitioner was convicted of Rape in the First Degree, Criminal Sexual Act in the First Degree, and Sexual Abuse in the First Degree. Pet. 1. However, defendant was convicted of Sodomy in the First Degree, not Criminal Sexual Act in the First Degree. Trial Tr. 941:5-942:10, ECF No. 6-2. In New York, the crime of Sodomy in the First Degree is now referred to as Criminal Sexual Act in the First Degree, N.Y. PENAL LAW § 130.50(1). See Cornell v. Kirkpatrick, 665 F.3d 369, 372 n.2 (2d Cir. 2011).

[2] Petitioner was tried by a jury in Queens County Supreme Court from April 29, 2009 to May 13, 2009 before the Honorable Gregory Lasak. Trial Tr., ECF No. 6-2 to 6-5. Respondent filed a copy of the trial transcript on the docket. The trial transcript begins at ECF 6-2, page 74 and concludes at ECF 6-5, page 184.

1

and approached her outside of the back entrance to her apartment complex. Trial Tr. 486:16-25. As she neared her apartment building, petitioner touched Ms. Segers' hand and demanded money. Trial Tr. 488:9-11, 489:3-5. Petitioner was wearing a mask and so Ms. Segers was unable to see his face. Trial Tr. 488:12-17. After demanding money, petitioner instructed Ms. Segers to unbutton her blouse and then he touched her breast for a few minutes. Trial Tr. 490:23-491:8. He then forced her to follow him, told her not to scream, and directed her to remove her coat. Trial Tr. 491:7-11, 492:12-17, 21-24. Petitioner removed his own clothes and forcibly inserted his penis into Ms. Segers' mouth. Trial Tr. 493:11-12, 494:20-495:6. He then forced Ms. Segers' to have vaginal intercourse. Trial Tr. 495:19-20, 496:17-25, 497:5-8. Petitioner ejaculated inside of Ms. Segers' vagina, put his pants on, threatened Ms. Segers, and then left the area. Trial Tr. 497:20-498:1, 498:23-499:7.

Ms. Segers went home and told her husband that she was raped. Trial Tr. 500:15-19. He called the police, who took her to the hospital. Trial Tr. 501:1-12, 502:9-14. There, a rape kit was prepared, which included swabbing Ms. Segers' mouth, vagina, and anus. Trial Tr. 502:9-16, 570:19-23. These swabs were untested until New York State partnered with Cellmark Labs (the "Lab") to test a backlog of rape kits. Trial Tr. 646:5-647:8, 648:23-649:2. In approximately 2000 or 2001, Ms. Segers' vaginal swab tested positive for semen and the Lab generated a male DNA profile which was shared with New York City's Office of the Chief Medical Examiner ("OCME"). Trial Tr. 662:19-22, 668:12-669:1, 669:8-10, 677:4-10.

On January 9, 2006, the Queens County District Attorney's Office filed a "John Doe" indictment against the DNA profile collected from Ms. Segers' vaginal swab and declared that the prosecution was ready for trial. Kanth Aff. ¶ 5, ECF No. 5; Resp't Appeal Br. 27, ECF No. 6. On January 9, 2007, the Combined DNA Index System matched the DNA profile generated from the

2

vaginal swab to petitioner's DNA profile which was stored in New Jersey's DNA databank. Kanth Aff. ¶ 5. The OCME confirmed the match and notified the District Attorney's Office. Trial Tr. 24:6-26:6. On February 6, 2007, the District Attorney's Office informed New Jersey of its intention to extradite petitioner and sought to lodge a detainer against him. Trial Tr. 28:6-25; Resp't Appeal Br. 15. On February 7, 2007, New Jersey responded that petitioner, who was incarcerated, had a parole date of April 17, 2007 and that he would be turned over for extradition on May 1, 2007. Trial Tr. 47:22-48:2; Resp't Appeal Br. 32. The indictment was amended to reflect petitioner's name at some point between January 10, 2007 and May 8, 2007 to facilitate petitioner's extradition. Resp't Appeal Br. 32. Petitioner waived extradition and was subsequently extradited to New York. Trial. Tr. 48:5-7.

## II. Relevant Pre-Trial Proceedings

Following his extradition, petitioner was arraigned on the indictment on May 11, 2007 and the prosecution stated it was ready for trial. May 11, 2007 Tr. 2:8-19, ECF No. 6-2. Petitioner was charged with Rape in the First Degree (N.Y. PENAL LAW § 130.50(1)), two Counts of Sodomy in the First Degree (N.Y. PENAL LAW § 130.50(1)), and Sexual Abuse in the First Degree (N.Y. PENAL LAW § 130.65(1)). Resp't Appeal Br. 2. Petitioner's case was adjourned multiple times for motion practice. May 11, 2007 Tr. 3:10-12; July 12, 2007 Tr. 2:25-3-2, ECF No. 6-2; Aug. 30, 2007 Tr. 2:25-3:3, ECF No. 6-2. During this time, petitioner moved to dismiss the indictment and the trial court denied his motion. Resp't Appeal Br. 36. On December 3, 2007, the prosecution sought a court order to collect petitioner's DNA sample and a detective subsequently performed a buccal swab on petitioner pursuant to that order. Id. at 40-41. Petitioner's DNA profile was generated from the buccal swab and OCME confirmed that petitioner's DNA matched the DNA profile found on Ms. Segers' vaginal swab. Trial Tr. 711:11-18.

3

On April 29, 2009, before petitioner's trial commenced, his counsel moved pursuant to New York Criminal Procedure Law ("C.P.L.") § 30.30 to dismiss the indictment on speedy trial grounds. Trial Tr. 2:14-18. Counsel argued that the People failed to exercise due diligence to promptly extradite petitioner from New Jersey to New York following the indictment of his DNA profile. Trial Tr. 2:25-4:5. The trial court denied petitioner's motion. Trial Tr. 170:8-10.

## II.     Petitioner's Trial

Petitioner was tried by a jury in Queens County Supreme Court from April 29, 2009 to May 13, 2009 before the Honorable Gregory Lasak. Trial. Tr., ECF 6-2 to 6-5. At trial, the people called multiple witnesses to testify, including Ms. Segers and expert witness Sheila Dennis, an OCME supervisor. Trial Tr. 476, 691. Ms. Segers testified that she was on her way home from work on the night of the incident and described being attacked and raped. Trial Tr. 483:6-11, 489:19-496:25.

Ms. Dennis was qualified "as an expert in the fields of DNA analysis and forensic biology" and testified regarding the DNA testing done at OCME. Trial Tr. 694:16-695:3. In pertinent part, she testified that she personally reviewed the DNA data from Ms. Segers' vaginal swab which was received from the Lab. Trial Tr. 700:19-703-11. She stated that she reached her own conclusion about the DNA on the swab by reviewing the Lab's "file in its entirety and generating the profile myself." Trial Tr. 703:8-11. Dennis also testified that she compared the buccal swab DNA profile from petitioner with the DNA from Ms. Segers' vaginal swab sample and established that the profiles were a "perfect match." Trial Tr. 704:4-709-2.

After the People rested, petitioner testified and stated that he knew Ms. Segers from his time as a security guard at a supermarket in her neighborhood. Trial Tr. 771:2-19. He stated that he and Ms. Segers "would flirt a little with each other from time to time." 771:20-25. Petitioner

4

further testified that on the night of the incident, Ms. Segers agreed to "hang out" with him and they "had casual sex." 774:16-25. He denied raping Ms. Segers. Trial Tr. 783:9-16.

On May 13, 2009, the jury found petitioner guilty of one count of Rape in the First Degree, one count of Sodomy in the First Degree, and one count of Sexual Abuse in the First Degree.[3] Trial Tr. 941:5-942:8. On June 10, 2009, petitioner was sentenced to twenty-five years imprisonment on the Rape count, twenty-five years on the Sodomy count, and seven years on the Sexual Abuse count, all to be served concurrently. Sentencing Tr. 15:14-21, ECF No. 6-5.

### III.     Procedural History

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department, arguing that his right to a speedy trial and his right to confront the witnesses against him were violated. Pet. Appeal Br. 2-3, ECF No. 6. Regarding his speedy trial claim, defendant argued that the People failed to exercise due diligence to promptly extradite him from New Jersey and in obtaining a buccal swab to confirm his DNA was present on Ms. Segers' vaginal swab. Id. at 24, 45. After the People responded, petitioner filed a reply brief which advanced an ineffective assistance of counsel argument, arguing that trial counsel's failure to challenge the delay in obtaining the buccal swab required a reversal "in the interest of justice." Pet. Appeal Reply Br. 6, ECF No. 6; Kanth Aff. ¶ 17.

The Appellate Division affirmed petitioner's conviction on April 17, 2019. People v. Clinkscales, 171 A.D.3d 1086 (2d Dept. 2019). The Appellate Division found that (1) the trial court properly rejected petitioner's speedy trial arguments, some of which were unpreserved, (2) petitioner's Confrontation Clause claim was unpreserved and without merit, and (3) all of his remaining arguments were without merit Id. at 1087-88. Petitioner sought leave to appeal to the

---

[3] The prosecution dismissed one count of Sodomy in the First Degree during the trial. Trial. Tr. 767.

New York Court of Appeals on speedy trial and ineffective assistance of counsel grounds, Pet. Req. for Leave to Appeal. 1, ECF No. 6, but that request was denied on October 15, 2019, People v. Clinckscales, 34 N.Y.3d 979 (2019).

### IV.        Instant Petition

Petitioner timely filed the instant *pro se* petition seeking a writ of habeas corpus raising three grounds: (1) a violation of his right to confront the witnesses against him under the Confrontation Clause; (2) a violation of his right to a speedy trial caused by his delayed extradition and DNA sample collection; and (3) ineffective assistance of counsel.[4] Pet. 6-10, ECF No. 1.[5] Respondent opposes the petition. Kanth Aff. & Mem. of Law, ECF No. 5.

## DISCUSSION

### I.        Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a habeas petition if the claim "was adjudicated on the merits in State court proceedings" and the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[4] Although the petition appears to contain four grounds for relief, grounds two and three both pertain to petitioner's speedy trial claims and will be treated as one ground for the purposes of the Court's analysis.

[5] For ease of reference, the Court considers the petition and its exhibits as one document and will refer to its ECF pagination.

6

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet,' . . . and 'highly deferential standard[,]'" and review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). A state court decision is "contrary to" federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court," or "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at" an opposite result. Evans v. Fischer, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established Federal law if the "state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Court cautions, however, that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original); see also Grayton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

Federal habeas review is limited to when petitioner is in custody "in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. §§ 2241(c), 2254(a); see also Wainwright v. Goode, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.") (citations omitted). "[F]ederal

7

habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (internal quotation marks and citation omitted).

## II.         Exhaustion and Procedural Default

A petitioner in custody pursuant to a state court judgment must exhaust his state court remedies prior to seeking federal habeas review. 28 U.S.C. § 2254(b)(1); see also Davila v. Davis, 137 S. Ct. 2058, 2064 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'") (citation omitted). To exhaust state court remedies, the petitioner must satisfy the "fair presentation" requirement. Baldwin v. Reese, 541 U.S. 27, 29 (2004). A petitioner fairly presents a claim only if he "has informed the state court of both the factual and the legal premises of the claim he asserts in federal court," such that the state courts were "fairly alerted" to the claim's federal nature. Bierenbaum v. Graham, 607 F.3d 36, 47, 47 (2d Cir. 2010) (citations and quotation marks omitted); see also Baldwin, 541 U.S. at 32 ("A litigant can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"); Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009) ("[A] claim is not 'fairly presented' to a state appellate court if discovery of that claim requires the court to 'read beyond a petition or a brief (or a similar document)' and conduct its own review of proceedings below.") (quoting Baldwin, 541 U.S. at 32). In New York, fair presentation of a claim to the Court of Appeals, the state's highest court, requires a petitioner to "include that claim in his letter-application to the Court of Appeals seeking leave to appeal." Carrasco v. Miller, No. 17-CV-7434(JPC)(BCM), 2020 WL 9256469, at *14 (S.D.N.Y. Nov. 13, 2020) (citing Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.

8

1991)) Report and Recommendation adopted by 2021 WL 1040473 (Mar. 18, 2021). A claim that is not exhausted is considered procedurally defaulted. Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (citation omitted).

Procedural default bars federal habeas review of a state court conviction. Id. Procedural default occurs in two ways: (1) A petitioner fails to exhaust state court remedies and so the state courts would find his claims procedurally barred or (2) a state court rejects a federal claim on a state law ground that is "independent and adequate of the federal question and adequate to support the judgment." Id. (internal quotation marks and citations omitted). The procedural default doctrine provides that federal courts have no authority to review state court decisions that rest upon adequate and independent state law grounds. Lee v. Kemna, 534 U.S. 362, 375 (2002); see also Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment[.]'") (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). "The rule applies with equal force whether the state-law ground is substantive or procedural." Lee, 534 U.S. at 375 (citing Coleman, 501 U.S. at 729); Whitley v. Ercole, 642 F.3d 278, 285 (2d Cir. 2011). Federal habeas review of a claim is foreclosed where the state court has expressly relied on the petitioner's procedural default as an adequate and independent state law ground. Green, 414 F.3d at 294 (citation omitted); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam). A petitioner may, nevertheless, obtain federal habeas review of a procedurally defaulted claim, if petitioner demonstrates either "cause for the default and prejudice," or that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman, 501 U.S. at 748–50).

### III. Petitioner's Claims

#### A. Petitioner's Confrontation Clause Claim

Petitioner claims he was deprived of his Sixth Amendment right to confront the witnesses against him because he did not have the opportunity to cross-examine the individual responsible for generating the buccal swab DNA profile. Pet. 6. In furtherance of this argument, he claims that expert witness Sheila Dennis introduced the buccal swab DNA profile, but she did not analyze the swab, supervise the analysis, nor do an independent analysis of the profile's raw data.[6] Id. (citing Pet. Appeal Br. 45). Therefore, petitioner claims that the state court proceedings violated his right to confront the witnesses against him. Id. (citing Pet. Appeal Br. 46-50). In support of this claim, he relies on several Supreme Court decisions, including Crawford v. Washington, 541 U.S 36, 53 (2004), Bullcoming v. New Mexico, 564 U.S. 647 (2011), and Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009). Pet. 6. Respondent argues that petitioner's Confrontation Clause claim is unexhausted and procedurally defaulted. Resp't Mem. Of Law 10, ECF No. 5.

##### 1. Petitioner's Confrontation Clause Claim is Procedurally Defaulted

As explained above, petitioner was required to fully exhaust state court remedies before seeking habeas corpus relief. 28 U.S.C. § 2244(b)(1)(A); see also Chrysler v. Guiney, 806 F.3d 104, 116 (2d Cir. 2015) (citing Ex parte Royall, 117 U.S. 241, 247-48 (1886)). Exhaustion requires presenting purported "federal constitution claims to the highest court of the state." King v. Phillips, No. 03-CV-4183 (CBA), 2005 WL 1027545, at *3 (E.D.N.Y. May 2, 2005) (quoting Grey, 933 F.2d at 119-20). Petitioner was required to present his claims to the Court of Appeals in his

---

[6] The petition cross references petitioner's state court appellate brief, portions of which are appended as exhibits. Therefore, the Court construes the arguments presented before the Appellate Division as petitioner's arguments for habeas relief.

application for leave to appeal. Carrasco, 2020 WL 9256469, at *14 (citing Grey, 933 F.2d at 120).

Petitioner failed to raise this Confrontation Clause claim in his leave application to the Court of Appeals, see Pet. Req. for Leave to Appeal, and is now procedurally barred from doing so. King, 2005 WL 1027545, at *3 (citing N.Y. Court Rules § 500.10(a)) (explaining that a petitioner only gets one opportunity to request leave to appeal to New York's highest court). His Confrontation Clause claim is therefore procedurally defaulted and barred from federal review. See Carrasco, 2020 WL 9256469, at *16, Ortiz v. Bradt, No. 13 Civ. 5420(BMC), 2013 WL 5775695, at *6 (E.D.N.Y. Oct. 25, 2013) (collecting cases).

To overcome procedural default, petitioner must demonstrate cause for the default and prejudice, see Vargas v. Keane, 86 F.3d 1273, 1280 (2d Cir. 1996) (citing Wainwright v. Sykes, 433 U.S. 72, 87–91 (1977)), or that a failure to review the ground will result in a fundamental "miscarriage of justice," Aparicio, 269 F.3d at 90. Here, petitioner fails to demonstrate cause and prejudice, or that a fundamental miscarriage of justice would result from the procedural bar.

### 2. Petitioner's Confrontation Clause Claim is Barred by an Independent and Adequate State Law Ground

The Appellate Division found that petitioner's confrontation clause claim was unpreserved for review. Clinckscales, 171 A.D. at 1087. Respondent argues that due to petitioner's failure to comply with New York's preservation rules, the Appellate Division's rejection of petitioner's Confrontation Clause claim was based on an independent and adequate state law ground and thus it is procedurally barred from Federal review. Resp't Mem. of Law 10, 12-15. Although petitioner agrees with respondent that this claim was unpreserved, he urged the Appellate Division, and now this Court, to nonetheless evaluate the claim because, at the time of his trial, the New York Court of Appeals had not yet applied Crawford to DNA analyst testimony under state law. Pet. 67.

11

Petitioner explains that it was not until 2016 in People v. John, 27 N.Y.3d 294 (2016), that the New York Court of Appeals considered the Confrontation Clause in the context of DNA analyst testimony. Id. Further, petitioner contends that the New York Court of Appeals did not consider the Confrontation Clause in the context of DNA databases until 2017, well after his trial. Id.

New York law requires a criminal defendant to raise an objection at the time of trial to preserve an issue for appellate review. See Bones v. Ercole, No. 06-CV-4797(MKB), 2012 WL 1902263, at *8 (E.D.N.Y. May 25, 2012) (citing CRIM. PROC. LAW § 470.05(2)). The resulting appellate bar when a petitioner fails to timely object to an issue at trial is an independent and adequate state law basis which precludes federal habeas review. Id. (citing Edwards v. Carpenter, 529 U.S. 446, 453 (2000)). Here, the trial record reflects, and the Appellate Division found, that petitioner failed to raise a confrontation clause challenge to Ms. Dennis' testimony at trial. Clinckscales, 171 A.D. at 1087. Therefore, habeas review is barred on this claim.

### 3.     Petitioner's Confrontation Clause Claim is Without Merit

Even if the Court were to review petitioner's Confrontation Clause claim, the claim would be denied as without merit because the state court's decision was not contrary to or an unreasonable application of clearly established Federal law. It is not an unreasonable application of clearly established Federal law "for a state court to decline to apply a specific legal rule that has not been squarely established" by the Supreme Court. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009); see, e.g., Schiro v. Landrigan, 550 U.S. 465, 478 (2007) (holding that since the Supreme Court had not addressed the law related to a particular issue, a state court conclusion regarding that issue was not contrary to clearly established Federal law).

According to the trial transcript, neither petitioner nor the prosecution asked Ms. Dennis if she was the individual who analyzed the buccal swab, supervised its analysis, or did her own

12

independent analysis of its raw data. Trial Tr. 692:7–712:7 (testimony of Sheila Dennis). While petitioner argues that the lack of clarity on whether Dennis analyzed the buccal swab violates his Sixth Amendment right, the record herein does not establish a violation. Dennis was not asked whether she generated the analysis of the buccal swab and so petitioner cannot demonstrate that Dennis was not involved in its analysis; she may have been involved but did not say so on the record because she was not asked this question. Trial Tr. 704:11–709:2. Even if Dennis had been asked and had answered that she was not involved in the analysis of the swab, there is no clearly established Federal law on whether Crawford extends to DNA profile analyses. Petitioner cites only two state cases, People v. John, 27 N.Y.3d 294 (2016) and People v. Austin, 30 N.Y.3d 98 (2017), which extend Crawford to DNA analysis. Pet. 57. The Appellate Division considered petitioner's claim on the merits and found Ms. Dennis' testimony was not contrary to John or Austin. Clinckscales, 171 A.D. at 1087 (citing Austin, 30 N.Y.3d at 105). In any event, these state law cases are not controlling in this Court's analysis of what is clearly established Federal law.

When confronted with claims similar to those presented by petitioner, other Courts in this Circuit have explained that a DNA analyst's testimony about testing performed by another does not require disturbing a conviction on Confrontation Clause grounds. See Washington v. Griffin, 876 F.3d 395, 407 (2d Cir. 2017); Carrasco, 2020 WL 9256469, at *24 (recommending denial of a habeas petition upon concluding that the admission of DNA evidence by a witness who did not perform the DNA testing was not contrary to or an unreasonable application of clearly established Federal law); Beckham v. Miller, 366 F. Supp. 3d 379, 385 (2019) (discussing the lack of any direct Supreme Court opinion addressing the issue).[7] In fact, the Second Circuit recognizes that

---

[7] Although the Appellate Division's decision was not contrary to or an unreasonable application of clearly established Federal law, the Supreme Court continues to evaluate this issue and area of law. While Crawford does not extend to *every* issue regarding DNA evidence under Federal law, the Supreme Court has ruled that Crawford applies to analyst testimonies for some lab reports. See, e.g., Bullcoming, 564 U.S. at 657-58 (noting that the in-court testimony of an

13

"the Supreme Court has never held that the Confrontation Clause requires an opportunity to cross examine each lab analyst involved in the process of generating a DNA profile and comparing it with another." Washington, 876 F.3d at 407. Since there is no clearly established Federal law on this question, even if petitioner's Confrontation Clause claim was not procedurally barred, he would not be entitled to habeas relief on this ground. See Thaler v. Haynes, 559 U.S. 43, 47-48 (2010) (noting that a principle is "clearly established federal law" under 28 U.S.C. § 2254(d)(1) only when it is "embodied in a holding" of the Supreme Court and denying a habeas petition on the basis that, in part, a general requirement is not a clearly established rule); Knowles, 556 U.S. at 122 (holding that it is not an unreasonable application of clearly established Federal law "for a state court to decline to apply a specific legal rule that has not been squarely established" by the Supreme Court).

---

analyst who did not sign the certification of a blood-alcohol concentration report nor personally perform or observe the performance of said report violated defendant's right to confront the witnesses against him). In Williams v. Illinois, a plurality of the Supreme Court denied a habeas petition on the basis that DNA testimony by a scientist who did not perform the analysis of the DNA in question was not barred by Confrontation Clause because it was not admitted for the truth of the matter asserted. 567 U.S. 50, 57-58 (2012). In dissent, Justice Kagan argued that these facts were clearly in violation of the Sixth Amendment under Bullcoming and Melendez-Diaz. Williams, 567 U.S. at 123-25 (Kagan, J., dissenting). In Williams, the DNA report in question was "not prepared for the primary purpose of accusing a targeted individual" and thus was not deemed subject to the Confrontation Clause under Crawford, Bullcoming, and Melendez-Diaz. 567 U.S. at 77, 84 (holding that petitioner's Sixth Amendment right was not violated since the truth of the expert witness' testimony in question—that two DNA profiles matched—"was not in any way dependent on the origin of the samples from which the profiles were derived…). Additionally, the DNA report itself was not introduced into evidence; the expert witness referred to the DNA report only to establish a match between the DNA profile in the report and the DNA profile from petitioner. See Williams, 567 U.S. at 79. In the instant case, petitioner's buccal swab was obtained after he was arrested and extradited, and petitioner argues the swab was done for the purpose of proving his guilt. Pet. 31, 63. Unlike in Williams, here, the DNA report was introduced into evidence. Id. at 73. If the DNA lab report for the buccal swab was found to be testimonial under Crawford, then it would be subject to the Confrontation Clause. See Crawford, 541 U.S at 53-54 (noting that an opportunity to cross-examine is a necessary condition for the admissibility of testimonial evidence under the Sixth Amendment). However, here, petitioner had the opportunity to examine Dennis.

14

### B.  Petitioner's Speedy Trial Claims

Petitioner claims his right to a speedy trial was violated by (1) respondent's delayed collection of petitioner's DNA and (2) respondent's failure to exercise due diligence in extraditing petitioner from New Jersey. Pet. 31. According to petitioner, these delays violated his statutory right to a speedy trial and, as he appears to suggest, his constitutional rights under the Fourteenth Amendment. Id. Respondent argues petitioner's speedy trial claims do not present a federal constitutional question. Resp't Mem. of Law 21-22.

#### 1.  Petitioner's State Law Speedy Trial Claims Are Not Cognizable

Respondent argues petitioner's state law speedy trial claims are procedurally barred and do not present a cognizable claim for habeas review. Resp't Mem. of Law 21-24. Petitioner presented his two speedy trial claims on direct appeal to the Appellate Division and in his application for leave to appeal. Id. at 6-7. The Appellate Division found that petitioner's speedy trial claims were either unpreserved or lacked merit. Clinckscales, 171 A.D.3d at 1087.

Respondent claims petitioner's appeal and leave application were based on state law, namely C.P.L. § 30.30 and, thus, petitioner's speedy trial claims are not cognizable on Federal habeas review. Resp't Mem. of Law 21-23. This Court agrees. A federal court may only review federal claims and lacks the power to review a conviction on state law speedy trial grounds. See Dowling v. Fisher, No. 11-CV-2025(SLT), 2014 WL 3611645, at *4 (E.D.N.Y. July 22, 2014) (collecting cases); see also Smith v. LaClair, No. 04 Civ. 4356(SAS), 2008 WL 728653, at *3 (S.D.N.Y. Mar. 17, 2008) ("[A] violation of a state statute such as C.P.L. § 30.30 is not cognizable on federal habeas review."). Criminal Procedure Law § 30.30 is a state law provision, therefore a violation of its terms does not give rise to a claim under the federal constitution. Smith, 2008 WL 728653, at *3 (quoting Cadilla v. Johnson, 119 F.Supp.2d 366, 374 (S.D.N.Y. 2000)). The petition

does not cite to Federal law on these claims, nor does it indicate that the claims are anything more than a general appeal to the constitutional right to Due Process. See Gray v. Netherland, 518 U.S. 152, 163 (1996). It is insufficient for a petition to "make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim." Id. Thus, petitioner's speedy trial claims are not cognizable on federal habeas review.

### 2. Petitioner's Speedy Trial Claims Are Not Contrary to Clearly Established Federal Law

Even if petitioner's speedy trial claims were construed as a violation of his constitutional right to a speedy trial under the Sixth Amendment, the Appellate Division's decision was not contrary to or an unreasonable application of clearly established Federal law. The Supreme Court requires this Court to use a balancing test to evaluate speedy trial claims. This balancing test examines: (1) the length of the delay, (2) the reason for the delay, (3) the assertion of the right to a speedy trial, and (4) the prejudice to the defendant. See Barker v. Wingo, 407 U.S. 514, 530 (1972) (citing United States v. Simmons, 338 F.2d 804, 807 (1964) cert. denied 380 U.S. 983 (1968)). The Sixth Amendment does not provide a specific timetable for when trial must commence and thus, under the Fourteenth Amendment, there is no specific time frame for due process. Id. at 522-23 (describing that the constitutional right to a speedy trial is "slippery" and "amorphous" and therefore cannot be "quantified into a specified number of days or months."). In fact, the Supreme Court in Barker, did not embrace the Second Circuit's rules that the prosecution "must be ready for trial within six months of the date of arrest, except in unusual circumstances, or the charge will be dismissed." Id. at 523. In sum, petitioner fails to establish Constitutional speedy trial violations. See, e.g., Allen v. Graham, No. 16-CV-1285 (KAM)(LB), 2020 WL 4482674, at *8 (E.D.N.Y. Aug. 4, 2020) (holding no violation of clearly established Federal law

by a state court's denial of petitioner's speedy trial claim based on a seven-year delay between arrest and indictment).

### C. Petitioner's Ineffective Assistance of Counsel Claim

Petitioner argues that his trial attorney was ineffective for not raising the prosecution's delay in seeking petitioner's buccal swab and that this violated his Sixth Amendment right to the effective assistance of counsel. Pet. 9, 108-14. Specifically, petitioner argues that because the 208-day period between his indictment and the collection of the buccal swab would have been determinative and resulted in dismissal under C.P.L. § 30.30, counsel's failure to raise and preserve this claim is Constitutionally ineffective assistance. Pet. 108-114. Respondent argues that the state Court decisions rejecting this argument were not contrary to or an unreasonable application of Federal law and that petitioner received effective assistance of counsel. Kanth Aff ¶ 24; Resp't Mem. of Law 25-29.

Petitioner fails to demonstrate that the state Court decisions regarding his ineffective assistance claim were contrary to or an unreasonable application of clearly established Federal law. To establish a claim of ineffective assistance of counsel, petitioner must show that: (1) counsel supplied deficient representation as demonstrated by a showing that counsel's conduct so undermined the process such that it cannot be relied on as having produced a just result and (2) that petitioner suffered prejudice as a result of the counsel's deficient performance, as demonstrated by reasonable probability that the result of the proceedings would have been different but for counsel's errors. See Strickland v. Washington, 466 U.S. 668, 690, 694 (1984). Under the second prong of the Strickland test, reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. at 694. The combined deferential standards of review

17

under AEDPA and Strickland create a "doubly" deferential standard of review of ineffective assistance claims. Harrington, 562 U.S. at 105.

Petitioner's claim fails both prongs of the Strickland test. Petitioner does not demonstrate that counsel's performance was deficient or that he suffered prejudice as a result. Petitioner fails to demonstrate that counsel's performance fell below an objective standard of reasonableness. Respondent notes that petitioner's counsel advanced his requested defense of consent, cross-examined witnesses, and attempted twice to dismiss the indictment, thereby demonstrating adequate representation. Resp't Mem. of Law 30. This Court agrees. Petitioner's counsel moved to dismiss the charges against petitioner twice, Jan. 28, 2009 Tr. 2:15-19, ECF No. 6-2; Trial Tr. 2:14-18, and cross-examined witnesses called by the prosecution, see e.g., Trial Tr. 505, 575, 617, 711-712. Counsel's representation was sufficient and did not undermine the judicial process such that it produced an unjust result. See Strickland, 466 U.S. at 688-89, 694.

Moreover, petitioner cannot demonstrate prejudice as a result of counsel's performance or his failure to raise the speedy trial argument at issue. New York's C.P.L. §30.30(1)(a) requires the prosecution to be ready for trial within six months of the commencement of a felony case. The petition, liberally construed, argues that since there were 208 days between petitioner's extradition and the buccal swab collection, the charges would have been dismissed had counsel sought dismissal on this basis and that petitioner suffered prejudice as a result of counsel's failure to preserve this claim. Pet. 37. Petitioner fails to demonstrate that had counsel raised the delayed buccal swab in a speedy trial motion, the outcome of his case would have been different. See Strickland, 466 U.S. at 693 (1984); Walker v. Bennett, 262 F. Supp. 2d 25, 36-37 (W.D.N.Y. 2003) (denying a habeas petition claim of ineffective assistance on the basis that a speedy trial motion would not have been successful if brought).

18

Had petitioner's counsel challenged the time period between his extradition date and the buccal swab, the challenge would likely have failed. New York's Criminal Procedure Law specifies certain periods of delay which are excluded from the overall six-month period within which the prosecution must be ready for trial in a felony case. C.P.L. § 30.30(4). These periods include the time "during which the defendant is without counsel through no fault of the court," and periods of delay attributable to pre-trial motion practice. Id. § 30.30(4)(a) & (f). As respondent describes in his motion papers, the period at issue included adjournments for the court to assign counsel, periods of motion practice, and court adjournments. Resp't Mem. of Law 28. The time was not likely chargeable to the prosecution, irrespective of the District Attorney's Office's alleged failure to timely obtain the buccal swab. See C.P.L. § 30.30(4); see also Killimayer v. Rock, No. 12-CV-6328(NSR)(LMS), 2013 WL 5586651, at *11 (S.D.N.Y. Oct. 9, 2013) (discussing periods of excludable time under C.P.L. § 30.30). For this reason, petitioner fails to demonstrate that errors by counsel "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions" and requiring reversal of his conviction. United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).

In sum, petitioner fails to establish ineffective assistance of counsel under the highly deferential Strickland standard. See Harrington, 562 U.S. at 105 (citing Strickland, 466 U.S. at 690) (noting that the question in a Strickland inquiry is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."). As such, the state court's decision on petitioner's ineffective assistance of counsel was not contrary to or an unreasonable application of clearly established Federal law.

## CONCLUSION

Accordingly, it is respectfully recommended that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. As petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259–60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

                                                     /S/
                                      LOIS BLOOM
                                      United States Magistrate Judge

Dated: October 12, 2021
      Brooklyn, New York